Approved: _Abigail S. Kurland_ (signature)
ABIGAIL S. KURLAND
Assistant United States Attorney

Before: HONORABLE GEORGE A. YANTHIS
United States Magistrate Judge
Southern District of New York



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 2-27-12

ORIGINAL

12 MAG. 480

\#1

- - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - v. -

VICTOR MARRERO,
ERICO FERNANDO MARTINEZ, and
DAVID HERRING,
 a/k/a "Tay,"

    Defendants.

- - - - - - - - - - - - - - - - - - - X

COMPLAINT

Violations of
21 U.S.C. § 846 and
18 U.S.C. § 2

COUNTY OF OFFENSE:
ROCKLAND

SOUTHERN DISTRICT OF NEW YORK, ss.:

    JOSE PINA, being duly sworn, deposes and says that he is a Yonkers Police Department Detective and a Task Force Officer with the Westchester Drug Enforcement Administration ("DEA") Task Force and charges as follows:

### COUNT ONE

    From in or about November 2011, up to and including in or about February 2012, in the Southern District of New York and elsewhere, VICTOR MARRERO, ERICO FERNANDO MARTINEZ, and DAVID HERRING, a/k/a "Tay," the defendants, intentionally and knowingly attempted to distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

    The controlled substance involved in the offense was 500 grams and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(B).

  (Title 21, United States Code, Section 846 and Title 18, United States Code Section 2.)

    The bases for my knowledge and for the foregoing charges are, in part, as follows:

1. I am currently employed as a Detective with the Yonkers Police Department and I am assigned to the Westchester DEA Task Force. I have participated in the investigation of this case. This affidavit is based upon my investigation and my conversations with other law enforcement agents and with a cooperating witness ("CW-1"). Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of my investigation. Where the contents of documents and the actions and statements of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

2. On or about November 29, 2011, other Task Force Officers and I surveilled a meeting that took place in the parking lot of the Palisades Mall in Nyack, New York, between CW-1 and an individual referred to as "Fernando," whom I later identified upon his arrest as ERICO FERNANDO MARTINEZ, the defendant, and a second individual, whom I later identified upon his arrest as VICTOR MARRERO, the defendant. Prior to the meeting, I outfitted CW-1 with an audio recording device. I have listened to the recording of the meeting and have spoken to CW-1 about the meeting. Based on my review of the audio recording and my discussions with CW-1, I know that CW-1 and MARTINEZ and MARRERO discussed, in sum and substance, conducting a drug transaction in which CW-1 would sell to MARTINEZ and MARRERO multiple kilograms of cocaine.

3. I have spoken to CW-1, who informed me, in sum and substance, that on or about February 19, 2012, ERICO FERNANDO MARTINEZ, the defendant, and CW-1 spoke over the telephone and arranged to meet on or about February 21, 2012, at the parking lot of the Palisades Mall in Rockland County, New York, to discuss CW-1's sale of cocaine to MARTINEZ and VICTOR MARRERO, the defendants.

4. On or about February 21, 2012, other Task Force Officers and I conducted surveillance of a meeting between CW-1 and VICTOR MARRERO and ERICO FERNANDO MARTINEZ, the defendants, at the parking lot of the Home Depot Store located in the Palisades Mall. Prior to the meeting, I outfitted CW-1 with an audio recording device. I have listened to the audio recording of the meeting and have spoken to CW-1 about the meeting. Based on my review of the audio recording and my discussions with CW-1, I know that CW-1 and MARRERO and MARTINEZ further discussed, in sum and substance, conducting a drug transaction, in which MARRERO and MARTINEZ would purchase approximately four kilograms of cocaine from CW-1 for approximately $27,500 per kilogram. CW-1,

-2-

MARRERO and MARTINEZ agreed to meet the next day at the same location to conduct the transaction. MARRERO further informed CW-1, in sum and substance, that MARRERO would bring a third individual to the meeting.

5. I have listened to audio recordings provided to me by CW-1 of a phone call that took place on or about February 22, 2012, between CW-1 and VICTOR MARRERO, the defendant. Based on my review of the audio recording, I know that CW-1 and MARRERO further discussed, in sum and substance, the cocaine transaction, and MARRERO indicated to CW-1 that MARRERO was going to purchase two kilograms of cocaine.

6. On or about February 22, 2012, other Task Force Officers and I conducted surveillance of another meeting between CW-1 and VICTOR MARRERO, ERICO FERNANDO MARTINEZ, and a third individual, whom I later identified after his arrest as DAVID HERRING, a/k/a "Tay," the defendants, at the parking lot of the Palisades Mall. Prior to the meeting, I outfitted CW-1 with an audio recording device. I have listened to the audio recording of the meeting and have spoken to CW-1 about the meeting. Based on my observations during the surveillance, my discussions with other Task Force Officers conducting surveillance, my discussions with CW-1, and my review of the audio recording, I have learned that the following events transpired at the meeting:

   a. CW-1 entered a Yukon Denali (the "Yukon") that was in the parking lot.

   b. HERRING exited a Ford Explorer (the "Ford") that was parked near the Yukon, approached the Yukon, then went back to the FORD, retrieved a plastic tan bag and then entered the Yukon.

   c. CW-1 was seated in the back of the Yukon with HERRING. MARRERO was seated in the driver's seat of the Yukon and MARTINEZ was seated in the front passenger seat of the Yukon.

   d. MARRERO introduced HERRING to CW-1 as his "partner." MARRERO further stated, in sum and substance, that the bag of cash was missing $3,500 and that MARTINEZ would bring CW-1 the rest of the money at a later time.

   e. Other Task Force Officers thereafter approached the Yukon and arrested MARRERO, MARTINEZ, and HERRING. Inside the Yukon the officers recovered a plastic tan bag, inside of which was a significant quantity of money.

-3-

       7.   I and other Task Force Officers interviewed VICTOR MARRERO, the defendant, following his arrest.  MARRERO said, in part and substance, that he was at the Palisades Mall parking lot to purchase cocaine from CW-1.

       8.   According to other Task Force Officers, ERICO FERNANDO MARTINEZ, the defendant, was interviewed following his arrest. MARTINEZ said, in part and substance, that the money in the bag was to purchase drugs from CW-1.

       9.   According to other Task Force Officers, DAVID HERRING, a/k/a "Tay," the defendant, was interviewed following his arrest. HERRING said, in part and substance, that HERRING was going to receive money for carrying cash to the drug deal.

      WHEREFORE, deponent respectfully requests that VICTOR MARRERO, ERICO FERNANDO MARTINEZ, and DAVID HERRING, a/k/a "Tay," the defendants, be imprisoned, or bailed, as the case may be.

_____
JOSE PINA
Yonkers Police Department Detective
and Westchester Drug Enforcement
Administration Task Force Officer

Sworn to before me this
23 day of February 2012

_____
HONORABLE GEORGE A. YANTHIS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

-4-